# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LABORERS' COMBINED FUNDS OF WESTERN PENNSYLVANIA**, as agent for Philip Ameris, and Paul V. Scabilloni, trustees ad litem, Laborers' District Council of Western Pennsylvania Welfare and Pension Funds, The Construction Industry Advancement Program of Western Pennsylvania Fund, and the Laborers' District Council of Western Pennsylvania and its affiliated local unions, <br><br>    Plaintiff, <br><br> vs. <br><br>**MOLINARO CORPORATION** and **ANTHONY LEONE**, <br><br>    Defendants. | 2:15cv1456 <br> **Electronic Filing** |
| **BOARD OF TRUSTEES OF THE BRICKLAYERS OF WESTERN PENNSYLVANIA COMBINED FUNDS, INC.**, <br><br>    Plaintiff, <br><br> vs. <br><br>**MOLINARO CORPORATION** and **ANTHONY LEONE**, <br><br>    Defendants. | 2:15cv1455 <br> **Electronic Filing** |

### MEMORANDUM OPINION
February 16, 2017

### I. INTRODUCTION

Plaintiffs, Laborers' Combined Funds of Western Pennsylvania ("Laborer Funds") and

1

Board of Trustees of the Bricklayers of Western Pennsylvania Combined Funds, Inc. ("Bricklayer Funds") (collectively "Funds" or "Plaintiffs"), instituted these related actions against Defendants, Molinaro Corporation ("Molinaro") and Anthony Leone ("Leone") (collectively "Defendants"), to recover fringe benefits and wage deductions Defendants allegedly were required to contribute to the Funds for the period from February 2015 through June 30, 2015, under certain signed collective bargaining agreements and incorporated Trust Agreements. The Funds each filed a motion for summary judgment, Defendants have responded, and the motions are now ripe for review.

## II. STATEMENT OF THE CASE[1]

The Funds are multi-employer employee benefit plans within the meaning of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 *et seq.* Pl. CSMF ¶ 1. During the time period relevant to this action, Molinaro was engaged in the business of operating a construction company in or about Western Pennsylvania. Pl. CSMF ¶ 2. At all relevant times, Anthony Leone was the sole shareholder, sole director, President, Secretary and

---

[1] The Funds filed a Concise Statement of Material Facts ("Pl. CSMF") in support of their motions for summary judgment. [ECF No. 18 (No. 15-1455); ECF No. 17 (No. 15-1456)]. The Local Rules of the United States District Court for the Western District of Pennsylvania require that Defendants file a responsive "concise statement which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by ... admitting or denying whether each fact contained [therein] ... is undisputed and/or material ... setting forth the basis for the denial if any fact ... is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record ..." *See* LR 56(C)(1)(a), (b). Although Defendants filed a short responsive brief entitled "Response to Plaintiffs' Motions for Summary Judgment," they failed to file a responsive concise statement replying to Plaintiffs' Concise Statement of Material Facts as required by the local rules. Material facts set forth in a moving party's concise statement of material facts will be deemed admitted for the purpose of deciding a motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See* LR 56(E). In this regard, the Court notes that Defendants, in their brief, appear to concede many of the facts asserted by the Funds. Although it is not for the Court to sort through the entire record to determine whether additional stated facts are disputed, the Court will use its best efforts to reconcile any obvious disagreements.

Treasurer of Molinaro. Pl. CSMF ¶ 3 (citing Deposition of Anthony Leone ("Leone Dep.") (Ex. 14) at 12).[2]

At all times material, Molinaro was bound by collective bargaining agreements ("CBAs") with the Laborer and Bricklayer Unions ("Unions") that required Molinaro to submit certain amounts for fringe benefits and wage deductions to the Funds on behalf of Molinaro's laborers and bricklayers. Pl. CMSF ¶ 4 (citing Pecora Affidavit (Ex. 2) ¶ 3; Ex. 10A at 43-48, 60-61; Ringer Affidavit (Ex. 4) ¶ 3; Ex. 11A at 11-13, 42; Leone Dep. at 13-14). The CBAs provided for the assessment of interest, late charges/liquidated damages, and attorneys' fees for each month that Molinaro failed to submit timely payment to the Funds. Pl. CMSF ¶ 5 (citing Ex. 10A at 43-44, 50; Ex. 10B; Ex. 11A at 11-13; Ex. 11B).

From January 2015 through May 2015, Molinaro employed laborers and bricklayers on various construction sites who performed work covered by such CBAs, and Molinaro and Leone failed to pay fringe benefit contributions and wage deductions on behalf of Molinaro's laborer and bricklayer employees for such work. Pl. CMSF ¶ 6 (citing Botsford Affidavit (Ex. 1) ¶¶2-5; DiCresce Affidavit (Ex. 3) ¶¶ 2-5). The Funds performed audits of the payroll books and records of Molinaro and provided audit reports to Molinaro. Pl. CMSF ¶ 8.

The Funds cite portions of Leone's deposition as corporate designee of Molinaro, in which Leone admits that, from August 2014 to the present, he: was the sole director, shareholder, and officer of Molinaro; signed Molinaro's CBAs with the Laborer and Bricklayer Unions as President; had the sole authority to decide what Molinaro bills were to be paid and not paid; had authority to sign Molinaro checks; oversaw the collection of all Molinaro's accounts receivables; knew or should have known of the amounts owed by Molinaro to the Funds since Molinaro filed

---

[2] Unless otherwise noted, all cited exhibits are contained in Plaintiffs' Appendix of Exhibits in Support of Motions for Summary Judgment. [ECF No. 19 (No. 15-1455); ECF No. 18 (No. 15-1456)].

reports without payment to the Funds listing the amounts owed and was sent by the Fund auditors' reports of the amounts of the audit deficiencies to the Funds; received weekly paychecks from Molinaro from August 2014 through the cessation of business of Molinaro in the summer of 2015; and personally guaranteed Molinaro's credit line with Molinaro's bank and made payments on the line after August 2014. Pl. CMSF ¶ 9 (citing Leone Dep. at 8-9, 11, 14, 29-32).

Count I of the Funds' Complaints is an ERISA collection action against Molinaro for the alleged delinquency amounts. Counts II and III seek recovery from Defendant Leone on the grounds that he is personally liable for the amounts in question for breach of his ERISA fiduciary duties (Count II) and for state law conversion of the funds (Count III). The Funds contend that, as a result of Defendants' failure to pay, Defendants are liable to the Funds for principal, interest, late charges/liquidated damages, attorneys' fees, and costs in an amount in excess of $110,000. Pl. CMSF ¶¶ 7, 10 and Exs. 12, 13 (itemizing alleged damages).

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a

genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. Celotex Corp., 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. Id. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

For the reasons set forth below, the Funds are entitled to summary judgment as to liability on the claims set forth in the Complaint.

## IV. DISCUSSION

### A. Count I – ERISA claim against Molinaro

Count I asserts an ERISA collection action against Molinaro seeking to recover the fringe benefits and wage deductions Molinaro allegedly failed to pay to the Funds along with related damages including late charges/liquidated damages, interest, and attorneys' fees and costs. In their response brief, Defendants do not oppose this count. Indeed, in their Pretrial Statement filed on September 29, 2016 -- after the Funds filed their Motions for Summary Judgment -- Defendants affirmatively concede liability under ERISA as to Molinaro. [ECF No. 26 (No. 15-

1455); ECF No. 25 (No. 15-1456)].

Because Defendants do not contest Molinaro's liability and ERISA provides a cause of action permitting recovery against Molinaro for the violations alleged (see 29 U.S.C. §§ 1132(a), 1145), the Funds' Motions for Summary Judgment are granted as to Count I of the Complaint.

**B. Count II -- ERISA Claim Against Leone**

Count II asserts an ERISA claim for breach of fiduciary duty against Leone personally for failure to remit fringe benefit contributions to the Funds. Under ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(I). ERISA further provides that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries [by ERISA] *shall be personally liable* to make good to such plan any losses to the plan resulting from each such breach . . . ." 29 U.S.C. § 1109(a) (emphasis added).

Section 3(21)(A) of ERISA defines "fiduciary" in relevant part as follows:

> A person is a fiduciary with respect to a plan to the extent he exercises any discretionary authority or discretionary control respecting management of such plan *or exercises any authority or control respecting management or disposition of its assets*.

29 U.S.C. § 1002(21)(A) (emphasis added). Accordingly, to determine whether an individual is an ERISA fiduciary, the court must determine (1) whether the unpaid contributions were plan assets; and (2) whether [the individual] exercised any control or authority over the management or disposition of such assets. PMTA-ILA Containerization Fund v. Rose, No. CIV. A. 94-5635, 1995 WL 461269, at *4 (E.D. Pa. Aug. 2, 1995); see also Laborers Combined Funds of W. Pa v. Cioppa, 346 F. Supp. 2d 765, 770 (W.D. Pa 2004) (same).

In order to determine whether unpaid contributions are "plan assets" under ERISA,

"[c]ourts strictly look to the language of the contract or the trust agreement." Roofers Local 30 Combined Welfare Fund v. Lentz McGrane, Inc., No. Civ. A. 03-4187, 2005 WL 425582, at *3 (E.D. Pa. Feb. 21, 2005) (citing Galgay v. Gangloff, 677 F. Supp. 295, 301 (M.D. Pa. 1987), aff'd, 932 F.2d 959 (3d Cir. 1991)); see also Cioppa, 346 F. Supp. 2d at 770 (same). In previous cases examining this issue, courts consistently have found that where the operative agreement contains language stating that any payments "due and owing" or "accrued" to the fund are vested in the fund, then such due and owing payments constitute "plan assets." See, e.g., Cioppa, 346 F. Supp. 2d at 768, 771 ("Title to all monies paid into and/or due and owing the Fund shall be vested in the Fund and/or its Trustees."); Galgay, 677 F. Supp. at 301 ("Title to all the monies paid into and/or due and owing said fund shall be vested in and remain exclusively in the trustees of the fund."); Laborers' Combined Funds of W. Pa. v. Parkins, Nos. 01-CV-79 & 01-CV-80, 2002 WL 31435287, at *3 (W.D. Pa. Jun. 5, 2002) ("Title to all monies paid into and/or due and owing such Fund shall be vested in the Trustees of such Fund."); Rose, 1995 WL 461269, at *4 ("Title to all of the money . . . paid into, acquired by, or accrued to the fund shall be vested in and remain exclusively in the board of trustees of the fund."); Connors v. Paybra Mining Co., 807 F. Supp. 1242, 1244 (S.D. W. Va. 1992) ("Title to all the monies paid into and/or due and owing to the Trusts specified in this Article shall be vested in and remain exclusively in the Trustees of those Trusts."). As the court in Galgay explained, "[b]ased on this language, . . . once the employer's obligation to contribute arose, the money that was owed became an asset of the plan. If the employer was delinquent in making such contributions, the unpaid monies were considered plan assets, and not merely receivables." Galgay, 677 F. Supp. at 302.

Here, the CBAs and/or trust agreements at issue contain similar operative language that vests title of the fringe benefit contributions to the Funds when such contributions become due and owing. See Pl. App'x, Ex. 10B ("No Employer obligated to pay Contributions shall have

any right, title, or interest to any sum payable by such Employer to the Fund, but not yet paid into the Fund. Title to all monies paid into and/or due and owing the Fund shall be vested in the Fund and/or its Trustees."); Ex. 11B ("No contributing employer shall have any right, title or interest to any sum payable by such Employer to the Fund, but not yet paid into the Fund. Title to all monies paid into and/or due and owing such Fund shall be vested in the Trustees of such Fund."); see also Defs.' Br. Opp., at 3-4 (admitting that "the CBAs do contain language that title to all monies 'due and owing' is vested in the fund"). Based on this plain language, and consistent with the caselaw cited above, the fringe benefit contributions at issue became plan assets at the moment they became due, rather than upon receipt by the Funds.

Further, Leone admitted in his deposition that he: was the sole principal of Molinaro; had the sole authority to determine what Molinaro bills to pay and not pay; oversaw the collection of Molinaro's accounts receivables; and was responsible for overseeing the submittal of monthly remittance reports and fringe benefit contributions to the Funds. Pl. App'x, Ex. 14 (Leone Dep.) at 8-9, 11; Pl. CSMF ¶ 9. Because Leone had discretionary authority and control over the management or disposition of the due and owing fringe benefit contributions, he was a fiduciary within the meaning of ERISA. His admitted failure to turn those plan assets over to the Funds by making the required contributions constitutes a breach of the fiduciary duties imposed on him by ERISA and renders him personally liable to Plaintiffs for damages. See 29 U.S.C. § 1104(a); Cioppa, 346 F. Supp. 2d at 772-73; Parkins, 2002 WL 31435287, at *4.

To the extent Defendants contend that the Funds must establish facts sufficient to warrant piercing the corporate veil in order to hold Leone personally liable as a fiduciary under ERISA, such argument is without merit. Although Defendants cite several cases that apply a "corporate veil" analysis to claims against corporate officers for fringe benefit contributions owed to benefit funds, Defendants' reliance on these cases is misplaced. Namely, as the Funds correctly note,

not one of these cases addresses a corporate officer's fiduciary duties under Sections 404 and 409 of ERISA, 29 U.S.C. §§ 1104, 1109(a). Instead, the cases Defendants cite sought to impose personal liability against the corporate officer as an "employer" under Section 515 of ERISA, 29 U.S.C. § 1145.[3] See, e.g., Solomon v. Klein, 770 F.2d 352, 353-54 (3d Cir. 1985); Amalgamated Cotton Garment & Allied Indus. Fund v. J.B.C. Co. of Madera, Inc., 608 F. Supp. 158, 167 (W.D. Pa. 1984); Combs v. Indyk, 554 F. Supp. 573, 575 (W.D. Pa. 1982); see also Int'l Molders & Allied Workers v. United Foundries, Inc., 644 F. Supp. 499, 502 n.1 (M.D. Pa. 1986) (non-ERISA case noting applicability of alter ego theory under ERISA); Connors v. P&M Coal Co., 801 F.2d 1373, 1378 (D.C. Cir. 1986) (discussing meaning of "employer" under ERISA).

In this case, the Funds do not argue that Leone is an "employer" under Section 515 of ERISA based on his status as a corporate officer. Rather, Count II seeks recovery against Leone as an ERISA "fiduciary" for breach of his ERISA fiduciary duties in violation of Sections 404 and 409. As fully explained above, a corporate officer acting in the capacity of an ERISA fiduciary can be held liable for breach of fiduciary duty irrespective of the corporate veil. See, e.g., Galgay, 677 F. Supp. at 297-302 (explaining separate analyses applicable to claims under Section 515 and breach of fiduciary duty claims under Sections 404 and 409); Cioppa, 346 F. Supp. 2d at 772-73 & n.7 (imposing personal liability on corporate officer based on his status as an ERISA fiduciary and noting distinction between breach of fiduciary duty claims and claims requiring courts to pierce the corporate veil); Parkins, 2002 WL 31435287, at *4 (agreeing that a corporate officer may be held personally liable for breach of ERISA fiduciary duties if he is an ERISA fiduciary and failed to act solely in the interest of the plan participants and beneficiaries); Connors, 807 F. Supp. at 1247-48 (declining to make a veil-piercing determination because it

---

[3] Section 515 of ERISA provides: "Every employer who is obligated to make contributions to a multi-employer plan under the terms of a collectively bargained agreement, shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

was unnecessary given the individual corporate defendants' personal liability for due and owing contributions under an ERISA breach of fiduciary duty theory).[4]

Because Leone is undisputedly an ERISA fiduciary who exercised control over the plan assets at issue, he is personally liable under Sections 404 and 409 of ERISA for breach of his fiduciary duties regardless of whether the undisputed facts support piercing of the corporate veil. Accordingly, summary judgment is granted in favor of the Funds and against Leone as to Count II of the Complaint.

### C. Count III – Conversion Claim Against Leone

Count III asserts a state common law claim against Leone for conversion of monies withheld from employees' wages for union dues and political action contributions but not paid to the Funds as required by applicable labor agreements. [ECF No. 1].[5] "Conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." Cioppa, 346 F. Supp. 2d at 765 (citing Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. Ct. 1987)). Under Pennsylvania's "participation theory," "a corporate officer who takes part in the commission of a tort by the corporation is personally liable for that tort." Id. (citing Voest-Alpine Trading USA Corp. v. Vantage Steel Corp., 919 F.2d 206, 217 (3d Cir. 1990)). Courts within this district have found

---

[4] The remaining cases Defendants cite in their opposition brief, while factually dissimilar from the instant case, confirm that a corporate officer may be personally liable for delinquent fringe benefit contributions or other duty breaches when that officer acts in the capacity of a fiduciary within the meaning of ERISA. See, e.g., Nelson v. Jones & Brown, Inc., No. Civ. A. 01-481, 2002 WL 31081363, at **3-4 (W.D. Pa. June 3, 2002) (recognizing that corporate officers could be held liable under ERISA for breach of fiduciary duty, but finding that officer in that case did not have authority over the plan or plan assets sufficient to give rise to fiduciary status); Confer v. Custom Eng'g Co., 952 F.2d 34, 36-39 (3d Cir. 1991) (same); Srien v. Frankford Trust Co., 323 F.3d 214, 220-21 (3d Cir. 2003) (recognizing that ERISA fiduciary status can attach to an individual if the person exercises *any* authority or control over the management or disposition of plan assets); Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1179 (3d Cir. 1996) (same); Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of NJ Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270,272-73 (3d Cir. 2001) (same).

[5] The wage deductions for union dues and political action contributions do not relate to an employee benefit plan within the meaning of ERISA, and thus are not recoverable from Leone under ERISA. See Cioppa 346 F. Supp. 2d at 773-74; Carpenters Combined Funds *ex rel.* Klein v. Klingman, No. 2:10-cv-63, 2011 WL 92083, at *7 (W.D. Pa. Jan. 11, 2011). Plaintiffs may seek recovery of these amounts under a conversion theory. See id.

that a corporate officer/owner may be held liable under the participation theory for conversion of wages withheld from employees and used to pay corporate liabilities rather than being submitted to employee benefit funds as required by labor agreements. See Cioppa, 346 F. Supp. 2d at 773; Parkins, 2002 WL 31435287, at **4-5.

Here, it is undisputed that Leone – as sole director, shareholder, and officer of Molinaro – was personally responsible for directing the payment of Molinaro's corporate expenses. Defendants likewise do not dispute that the applicable CBAs required Molinaro to submit to the Funds wages withheld from the company's laborers for union dues and political action contributions, and that Leone failed to do so. In failing to remit the withheld wages to the Funds, Leone clearly deprived the Funds of their right of property and, therefore, is personally liable for conversion of the withheld wages under Pennsylvania law. See Cioppa, 346 F. Supp. 2d at 773 (granting summary judgment against individual defendant on similar conversion claim, explaining that "the withheld wages were not submitted to the Combined Funds, and, regardless of what he did with the withheld wages, [defendant] clearly deprived others of their right of property"); Parkins, 2002 WL 31435287, at *5 (same); Carpenters Combined Funds ex rel. Klein v. Klingman, No. 2:10-cv-63, 2011 WL 92083, at *7 (W.D. Pa. Jan. 11, 2011) (same).[6]

Accordingly, summary judgment will be entered in favor of the Funds on their conversion claim against Leone as a matter of law.[7]

---

[6] Defendants do not raise any specific counterarguments in opposition to the conversion claim. See ECF No. 20 (Case No. 15-1455); ECF No. 19 (Case No. 15-1456). To the extent Defendants rely on the corporate law principle of limited personal liability raised in opposition to Plaintiffs' breach of fiduciary duty claim, that argument is unpersuasive in the conversion context as well. As set forth above, Pennsylvania law clearly contemplates individual liability for conversion by corporate officers under facts such as those presented here.

[7] In a single sentence at the end of their opposition brief, Defendants assert, for the first time and without citation, that the Plaintiff Funds "did not provide sufficient manpower as to allow Molinaro to bid on large jobs or to finish jobs in a more timely manner, making it difficult or impossible for Molinaro to comply with its contractual obligations to the Funds." ECF No. 20, at 5 (No. 15-1455); ECF No. 19 at 5 (No. 15-1456). Defendants do not provide any factual or legal support whatsoever for this conclusory "defense," and it merits no further discussion here.

**D. Damages**

The only issue remaining is the amount of damages for which Molinaro and/or Leone are liable. Under ERISA, the award of interest, liquidated damages, and reasonable attorneys' fees is mandatory in actions involving delinquent contributions. See 29 U.S.C. § 1132(g)(2); Anker Energy Corp. v. Consolidation Coal Co., 177 F.3d 161, 179 & n.9 (3d Cir. 1999). Under the conversion theory, damages are intended to compensate a plaintiff for actual loss. See Klingman, 2011 WL 92083, at *8.

Here, as to the ERISA claims, the Funds seek the delinquent fringe benefit payments, interest on the delinquent payments, liquidated damages, attorneys' fees and costs. As to the conversion claim, the Funds seek the monies withheld from the laborers' wages for union dues and political action contributions but not paid to the Funds, together with interest on the withheld wages. See ECF No. 19 (App'x Exs 1, 3, 12, 13, detailing amounts claimed).[8]

In particular, the Laborers' Funds seek to recover a total of $16,654.74 plus additional interest at 1¼% per month from June 30, 2016 from Molinaro. From Leone, the Laborers' Funds seek to recover a total of $14,869.92 on the ERISA claim and $1,367.30 on the conversion claim, plus additional interest at 1¼% per month from June 30, 2016. See Pl. App'x, Exs. 1, 12. The Bricklayers' Funds seek to recover a total of $40,358.74 plus additional interest at 1% per month from June 30, 2016 from Molinaro; and a total of $37,165.85 on the ERISA claim and $2,446.30 on the conversion claim against Leone, plus additional interest at 1% per month from June 30, 2016. Pl. App'x, Exs. 3, 13.

---

[8] In addition to relevant ERISA damage provisions, the applicable CBAs and incorporated Trust Agreements contain specific provisions detailing damages for delinquent contributions. See Pls.' App'x Ex. 11B (damages for delinquent contributions to Bricklayers' Funds include interest at the rate of 1% per month, liquidated damages, and attorneys' fees); Ex. 10A, at 50 (damages for delinquent contributions to Laborers' Combined Funds include interest at the rate of 1¼% per month, liquidated damages, and attorneys' fees).

As set forth above, Defendants failed to file a response to Plaintiffs' Concise Statement of Material Facts or otherwise to dispute the damage calculations provided by the Funds.  In contrast, and in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56, Plaintiffs have supported their damage claims with affidavits and proper citation to ERISA and relevant provisions of the applicable CBAs and incorporated Trust Agreements.  See, e.g., Pl. CSMF & App'x Exs. 1-4, 10A, 10B, 11A, 11B, 12-13.

For these reasons, the Court finds that the Funds are entitled to the damages claimed.

V. CONCLUSION

For all of these reasons, the Funds' Motions for Summary Judgment are granted in their entirety. An appropriate Order will follow.

    s/ DAVID STEWART CERCONE
    David Stewart Cercone
    United States District Judge

cc: Jeffrey J. Leech, Esquire
    Neil J. Gregorio, Esquire
    William P. Lewis, Esquire
    Adam G. Vahanian, Esquire

(*Via CM/ECF Electronic Mail*)